IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MATT JAMES FULFORD,

    Petitioner,                    No. CIV S-07-1595 FCD GGH P

    vs.

IVAN CLAY, et al.,

    Respondents.               FINDINGS AND RECOMMENDATIONS

/

I. Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 conviction for misdemeanor and felony hit and run in violation of Cal. Vehicle Code §§ 20001(a), (b)(1), and § 20002(a). Petitioner is serving a sentence of six years.

        The petition raises one claim: insufficient evidence to support the conviction for felony hit and run. After carefully considering the record, the court recommends that the petition be granted.

II. Anti-Terrorrism and Effective Death Penalty Act (AEDPA)

        The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle,

138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The California Court of Appeal was the last state court to issue a reasoned decision denying petitioner's claims. Respondent's Lodged Documents 2, 7. Accordingly, the court considers whether denial of the claims by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

III. Discussion

The opinion of the California Court of Appeal contains a factual summary of petitioner's offense. After independently reviewing the record, the court finds this summary to be accurate and undisputed. Accordingly, it is adopted below.

| | |
|---|---|
| 1 | On a spring evening, 76-year-old Alvaro Azevedo went outside to lock his Jeep, which was parked in his driveway.  Azevedo sat partially in the driver's seat, with his left leg outside the vehicle, to turn on the ignition and close the Jeep's window.  Azevedo heard a loud noise, as if a shotgun had gone off, and felt the Jeep spin around.  The impact knocked his glasses off. |
| 2 | |
| 3 | |
| 4 | Without his glasses, Azevedo could not see what kind of vehicle had hit him.  However, he heard an engine speeding up and tires squealing. |
| 5 | |
| 6 | Azevedo discovered his head was bleeding and got out of the Jeep.  He later learned he had bleeding in his brain; the surface injury required five or six stitches.  He felt residual pain and weakness in his left leg for a month after the accident.  The Jeep was totaled. |
| 7 | |
| 8 | Robert Burton, Azevedo's next-door neighbor, returned home that evening to find his half-ton pickup truck badly damaged.  The truck, parked in Burton's driveway, sustained damage to its fender, bumper, grill and headlights. |
| 9 | |
| 10 | Ed Steininger, another neighbor, heard two loud bangs and a car "peeling out."  Steininger looked over his backyard fence and saw a large white car speeding away. |
| 11 | |
| 12 | Yet another neighbor, George Troie, heard two loud bangs.  When he ventured outside, Steininger told him there had been a hit and run.  Steininger described the car he saw involved in the incident. Troier drove off in the direction Steininger indicated the vehicle had gone and eventually saw a car that fit the description Steininger had given him.  Troie drove back to the incident scene and asked Steininger to come with him to identify the vehicle. |
| 13 | |
| 14 | |
| 15 | |
| 16 | Not far away, the pair came upon the car matching Steininger's description.  The car, parked on a lawn, was damaged.  Steininger noted the license number, which they later provided to police.  At the time the two men spotted the car, it was not covered by a tarp. |
| 17 | |
| 18 | California Highway Patrol Officer Michael Terry investigated the incident.  When he went to the address where Steininger and Troie located the car, he found the vehicle covered by a black, semi-transparent tarp.  The license plate, visible under the tarp, matched that noted by Steininger.  Terry observed damage to the right front of the car.  He noted the hood of the car was warm.  When Terry contacted the resident at that address, she told Terry the car belonged to defendant.  Defendant, who had gone to the store, returned soon after; the keys to the white car were in his pocket. |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | Tommy Brashear, a friend of defendant, also testified for the prosecution.  Defendant arrived at Brashear's home that evening and asked for a tarp.  He was nervous and told Brashear he had hit a telephone pole.  Defendant asked Brashear to tell anyone who asked that defendant was not driving the car. |
| 24 | |
| 25 | Defendant testified on his own behalf.  The evening of the incident he returned home from work.  Tired because he had recently stopped taking medication, defendant believed he dozed off and suddenly awoke when his car crashed into |
| 26 | |

4

  something.

  Defendant awoke in a yard, and as he turned to get back onto the street, he struck another car. Defendant panicked; he did not know what to do. He left the scene because he lacked a current registration for the recently purchased vehicle and had no automobile insurance. Believing he was in trouble and not seeing any witnesses, defendant left. Defendant covered the car because he was frightened someone had seen him.

  Defendant did not look to see if anyone was hurt at the scene because he believed he had hit a parked car. Defendant never got out of the car; he just left. He admitted asking Brashear to lie for him.

  On cross-examination, defendant acknowledged that by failing to remain at the scene, he had committed a crime. He also admitted lying to police when he made up a story about someone else driving a car.

  The jury found defendant guilty on both counts. The court found the allegations of the prior convictions to be true. The trial court sentenced defendant to six years: two years for felony hit and run, doubled under Penal Code sections 667, subdivisions (b)-(I) and 1170.12, plus additional one year terms for both prior convictions for which he served prison terms. He was sentenced to time served on the misdemeanor charge. Defendant was assessed $2,440 in attorney fees. He filed a timely notice of appeal.

Respondent's Lodged Document 2, pp. 2-5.

  Petitioner argues that there was insufficient evidence to support his conviction for felony hit and run because there was no evidence that he knew anyone had been injured.

  When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable

doubt. It is whether rational jurors could have reached the same conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).

United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)(emphasis added).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

The California Court of Appeal denied petitioner's claim for the following reasons:

> Defendant argues that insufficient evidence supports his conviction for felony hit and run, violating his right to due process. According to defendant, the jury's verdict was based on "sheer speculation," requiring reversal.
>
> The jury convicted defendant of violating Vehicle Code section 20001, subdivisions (a) and (b)(1). As the court instructed, Vehicle Code section 20001 makes it a crime for the driver of a vehicle involved in an accident resulting in

injury to any person to fail: "a. To immediately stop at the scene of the accident; [¶] b. To give his name, current residence address, the registration number of the vehicle to the person injured or to the driver or occupants of the other vehicle, if any, and to any traffic or police officer at the scene of the accident and though requested, failed to show his available driver's license; and [¶] c. To render reasonable assistance to a person injured..." (CALJIC No. 12.70.)

In determining the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (People v. Valdez (2004) 32 Cal.4th 73, 104.) We presume the existence of every fact in support of the evidence that the trier of face could deduce from the evidence, including reasonable inferences based on the evidence. (People v. Lee (1999) 20 Cal.4th 47, 58.)

Inferences reasonably deducible from the evidence constitute substantial evidence. The inferences need not be the only ones the evidence supports, and the evidence of the ultimate fact in question need not be strong. (People v. Wharton (1991) 53 Cal.3d 522, 546; People v. Johnson (1980) 26 Cal.3d 557, 576.)

Defendant contends there is no evidence he knew anyone had been injured in the incident. Defendant did not see Azevedo after the crash, and the Jeep had tinted windows, preventing anyone outside from looking within.

Knowledge of injury is an essential element of felony hit and run. As the Supreme Court observed: "Usually, however, such knowledge must be derived from the surrounding facts and circumstances of the accident. [Citation.] Yet the driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge. Hence a requirement of actual knowledge of injury would realistically render the statute useless. We therefore believe that criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury *or if he knew that the accident was of such a nature that one would reasonably anticipate* that it resulted in injury to a person." (People v. Holford (1965) 63 Cal.2d 74, 80 (Holford); italics added.)

At trial, the prosecution underscored the timing and location of the incident as supporting defendant's constructive knowledge that he had injured someone in the crash. During closing argument, the prosecution observed: "This was a little bit before seven o'clock in the evening...People were coming to and fro...This is an area where people live and frequent, it's in the evening and people are in and about their vehicles and homes and driveways and residences, very reasonable and probable to expect that someone was either coming home from work in or about their car."

On appeal, the People also note that at the time of the collision, Azavedo was seated in the driver's seat with the door open and his leg outside the vehicle. Defendant testified that after hitting the second vehicle, he "looked back" and saw the damaged Jeep. These facts provide strong circumstantial evidence of defendant's implied knowledge that the crash resulted in personal injury.

       Defendant disagrees, claiming all the damage was to the passenger side rear of the Jeep and Azevedo was seated in the driver's seat.  Therefore, "when appellant looked back after hitting Mr. Burton's truck he would have seen only the passenger's side of the Jeep as it had come to rest in Mr. Azevedor's neighbor's yard, not on the driver's side. Accordingly, there is no evidence which supports a conclusion that appellant actually saw Mr. Azevedo or the open driver's side door."

       However, actual knowledge is not required for conviction under Vehicle Code section 20001.  Given the time and location of the incident, and the fact that Azevedo sat with part of his body extending out of his Jeep, sufficient evidence is provided in support of a finding that the collision "was of such a nature that one would reasonably anticipate that it resulted in injury to a person."  (Holford, supra, 63 Cal.2d at p. 80.)

Respondent's Lodged Document 2, pp. 5-8.

       The usual issue, borne out by reading Holford and cases which rely upon it, is whether the force of the collision was such that one could anticipate that a person within the car might have suffered injury.  There is no doubt that the force of the collision in petitioner's case was such that injury could have occurred.  However, in all of the hit and run cases citing Holford, there was no issue whatsoever concerning whether a person was in the victim vehicle.  These cases involved a *moving* victim vehicle so that the only inference to be drawn was that a person was within the vehicle.  See e.g., People v. Rocovich, 269 Cal. Rptr. 755 (1969); People v. Carter, 243 Cal. App. 2d 235, 52 Cal. Rptr 207 (1966).  There are no felony cases to the undersigned's knowledge where the jury was asked to infer that an injured person was located within a parked vehicle.

       The problem with the analysis of the Court of Appeal is that the only "evidence" regarding the likelihood that a person would be in a parked car at the time of the collision was that contained within the argument of the prosecutor.  The undersigned has gone through the record, page-by-page.  The *only* evidence about the scene of the collision, just prior to the collision, was that collision occurred in a residential area.  RT 169.  There is no evidence about "[p]eople were coming to and fro."  There is no evidence about ... "people are in and about their vehicles... and driveways ..."  In fact, there was no eyewitness to the collision itself; the witnesses

testified about hearing the crash, and then coming from their residences or back yard patios to see what happened.  Since the usual commute rush hour would have expired about one hour prior to the accident (which occurred at or about 7:00 p.m.), the prosecutor's conclusion that it was "very reasonable and probable to expect that someone was either coming home from work in or about their car" was based on nothing in the record.

Despite vigorous cross-examination, petitioner was adamant that all he was aware of was that he hit a parked car. RT 163.

While reasonable inference can be drawn from the facts, there is a difference between speculating and inferring.  The prosecutor's picture of the scene with people milling about in substantial numbers was one of her own painting.

The prosecutor emphasized that petitioner attempted to cover-up the fact that his vehicle was involved in a collision and that he attempted to misrepresent facts to the investigating officer, and even encouraged an acquaintance to lie for him.  However, one could not reasonably infer that because petitioner fled the scene in his vehicle (which had not been registered to him at the time), and attempted to cover it up he really did know that he hit a person.  Petitioner hit two vehicles and would have the knowledge that he would be in trouble because of the two collisions in any event.   If the prosecutor's speculation were to direct the rule in this case, *every* automobile crash involving significant force and a parked car would involve the automatic inference that the defendant knew that a person was within the car.  The Court of Appeal did not rely on the prosecutor's strained argument.

The final fact relied upon by the Court of Appeal was the fact that the injured person was sitting in his car in the driveway, with one leg outside the car, when hit by petitioner's car.  The evidence in the case regarding the collision indicates that petitioner hit the rear passenger side of the car, making it very doubtful that he would have seen the person in the car (since he obviously didn't see the car at all in the first place).  When petitioner glanced back at the car where it had finally come to rest, it again presented only the passenger side in that the

9

force of the collision spun the car around. No one disputes these logistical facts.[1]

While the Court of Appeal was certainly correct that under California law, that actual knowledge of injuring a person is not necessary and that the circumstances of the accident might demonstrate that a person might reasonably anticipate that he had injured a person, the circumstances must still suggest that a person was in the vehicle. Here the *facts* as opposed to the speculations and made up evidence all suggested that a person would not be in a car, parked in a driveway, at 7:00 p.m. In the alternative, there are no facts to suggest that petitioner actually knew a person was in the parked automobile.

The undersigned is well aware of the high level of deference paid to the reasoning of state courts in AEDPA cases. However, the conclusions of the state courts are not immune from review. Here, the conclusion that petitioner either actually knew that he injured a person, or that an objective person would reasonably anticipate that he had injured a person was based on no observable facts in the record.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

\\\\\

\\\\\

---

[1] The Court of Appeal conflated the analysis of whether a reasonable person would anticipate that a person was injured in the crash and whether petitioner himself had actual knowledge of the crash.

1 | that failure to file objections within the specified time may waive the right to appeal the District
2 | Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 | DATED: 03/24/08

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

7 | ful1595.157